UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 05-268** |
| **JERRY CUTNO** | **SECTION "B" (1)** |

ORDER AND REASONS

Defendant Jerry Cutno seeks relief under the provisions of either judgment of acquittal under Rule 29 and/or a new trial under Rule 33 of the Federal Rules of Civil Procedure (Rec. Doc. No. 236). For oral reasons given at today's hearing and the following, **IT IS ORDERED** that said motions are **DENIED**.

*BACKGROUND*

On June 29, 2005, the New Orleans Police Department was called to investigate a shooting at Shadowbrook Apartments in Algiers. Upon investigating the apartment where the alleged shooting occurred, police found approximately 200 grams of cocaine. As part of their investigation, the New Orleans Police Department followed a blood and footprint trail away from the apartment and arrested Jerry Cutno with a gun in his possession for the shooting death of Paul Miller. Ashley Williams also found in the apartment, was arrested in connection with the shooting death of Paul Miller. Later, Ryan Veazie was arrested in Georgia for the shooting death of Paul Miller.

1

The state murder case against Williams and Cutno was ultimately *nolle prossed* by the Orleans Parish District Attorney's Office.  The United States Attorney's Office for the Eastern District of Louisiana instituted capital weapons charges and drug charges against Cutno and Veazie, exposing them to a potential death sentence.

Count One alleged that prior to June 25, 2005 and continuing to on or about June 29, 2005, Jerry Cutno and Ryan Veazie did knowingly and intentionally conspire with each other and with other persons known and unknown to the Grand Jury to possess with the intent to distribute cocaine.  In addition, Count Two accused Defendants of knowingly carrying and using firearms, a Hi-Point model 457, and a .45 caliber semi-automatic pistol in relation to a drug trafficking crime, which caused the death of Mr. Paul Miller.  Count Three accused only Defendant Ryan Veazie of having been previously convicted of a crime punishable by imprisonment for a term exceeding one year and possessing above mentioned firearms.

Defendant Ryan Veazie moved to sever his trial from co-defendant, Jerry Cutno because of jailhouse confessions or statements against interest made by Jerry Cutno and the prejudicial spillover from the inculpatory evidence the government intends to introduce as to Jerry Cutno.  In response to the *Bruton* issue presented, the Court held a trial with a separate jury for each Defendant.  Specifically, Defendant Ryan Veazie's Motion to Sever

Defendant from Co-Defendant (Rec. Doc. No. 147) was granted in part and denied in part (Rec. Doc. No. 178).  In the interest of judicial economy and in order to remedy the *Bruton* issue, one trial with a separate jury for each Defendant was held.

Jerry Cutno and Ryan Veazie were simultaneously tried before separate juries for conspiracy to possess with the intent to distribute cocaine and use of a firearm in the commission of a drug trafficking offense, which caused the death of Mr. Paul Miller. Ryan Veazie was also accused of having been previously convicted of a crime punishable by imprisonment for a term exceeding one year and of possessing above mentioned firearms.  On February 29, 2008, Defendant Jerry Cutno was convicted by a jury as to all counts charged, and later that day a separate jury found Ryan Veazie not guilty as to all counts.

Defendant Jerry Cutno seeks a judgment of acquittal and contends that (1) the application of the law regarding conspiracy requires the acquittal of Mr. Cutno; (2) the Government's evidence, was not inconsistent with every hypothesis of Mr. Cutno's innocence; and (3) the acquittal of Co-Defendant Ryan Veazie compels a similar verdict on behalf of Mr. Cutno.

In the event that the Court does not enter a Judgment of Acquittal, Defendant Jerry Cutno moves for a new trial due to the conflicting verdicts rendered herein.  He lists the following factors as justification of being given a new trial in the interest

of justice: (1) Mr. Cutno was denied the right to present reliable evidence that would have supported his theory of defense; (2) Government witness Kenneth White testified untruthfully about his criminal history and the Government failed to correct his false testimony; (3) Mr. White violated the Court's direct order not to mention anything about other crimes possibly committed by Mr. Cutno when he testified regarding a previous incarceration of Mr. Cutno and the resulting motion for a mistrial should have been granted; (4) the Government's violation of the Court's discovery order prevented the defense from obtaining an expert to testify regarding critical issues involving the cocaine located in Ashley Williams' apartment; (5) the Court's denial of Mr. Cutno's Motion for Severance of counts allowed his jury to hear prejudicial other crime evidence in the form of Mr. Veazie's prior felony conviction that had no probative value as to Mr. Cutno; (6) the Court's denial of the Motion to Sever Defendants prevented Mr. Cutno from vigorously defending himself due to his fear that he would be identified as a "rat" by either Mr. Veazie, his family, or supporters in the audience.

The Government asserts that Fifth Circuit law does not support Cutno's contentions that his conviction constitutes an inconsistent verdict that must be overturned. The Government likened the case at bar to the Eleventh Circuit pronouncement regarding two-jury

trials, where the court indicated in the absence of any specific indicia of prejudice, in addition to the jury's finding of guilt as to only one of the co-defendants, the Constitution has not been violated. The Government further avers that the situation at bar does not amount to inconsistent verdicts, as the jury found that Cutno conspired with another to murder Miller and suggests that said conspiracy could have been with Ashley Williams. In addition, the Government asserts that there is no alternative reasonable conclusion that the jury could have reached, especially considering that the evidence must be viewed in the light most favorable to the prosecution. Finally, with regard to the new trial under Rule 33 of the Federal Rules of Criminal Procedure, the Government asserts that there are no factors present which require a new trial based upon the interests of justice.

### DISCUSSION

**A.   Judgment of Acquittal Under Rule 29(c)**

If a jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal in accordance with Rule 29(c)(2) of the Federal Rules of Criminal Procedure. In ruling on a Rule 29(C) motion, the trial court must determine whether the relevant evidence viewed in a light most favorable to the prosecution, could be accepted by a reasonable jury to support a finding of the defendant's guilt. *United State v. Evans*, 572 F.2d

455 (5th Cir. 1978), *rehearing denied* 576 F.2d 931 (5th Cir. 1978). In *United States v. Fredericks*, 586 F.2d 470 (1978) *cert denied* 440 U.S. 962 (1979), the Fifth Circuit described the applicable test for determining the sufficiency of the evidence as whether the jury might reasonably conclude that the evidence viewed in a manner most favorable to the prosecution is inconsistent with every hypothesis of the defendant's innocence.

### 1. Government's Evidence and Inconsistency with Every Hypothesis of Defendant's Innocence

Defendant Jerry Cutno challenges the outcome of the trial by stating that the Government's evidence was not inconsistent with every hypothesis of Mr. Cutno's innocence. However, this assertion is only supported when the evidence is not viewed in the light most favorable to the prosecution, which is antithetical to the requirements for a court to grant a judgment of acquittal. Ms. Williams testified that she fled before seeing the shooting and therefore cannot refute the hypothesis of the defense that Mr. Veazie shot Mr. Miller with one gun in the apartment and then shot him with the other gun after the first one misfired and injured his hand. However, Defendant's assertion does not refute the crimes that Defendant Cutno was charged and convicted of, which was conspiracy to possess with the intent to distribute cocaine and the use of a firearm in the commission of a drug trafficking offense that resulted in the death of Paul Miller. In viewing the sum of the evidence in the light most favorable to the defendant, the

confession made by Jerry Cutno ameliorates the doubt cast by Ms. Williams' failure to watch the entirety of the shooting.

### 2. Differing Outcomes

In the case of joint trials for conspiracy, the Fifth Circuit has stated, "[c]onsistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against one can stand." *United States v. Zuniga-Salinas,* 952 F.2d 876, 878 (5th Cir. 1992)(quoting *United States v. Andrews*, 850 F.2d 1557, 1561 (11th Cir. 1988)(en banc), *cert denied*, 488 U.S. 1032 (1989). The *Zuniga-Salinas* court also stated, "[a]n inconsistent verdict should no longer be a bar to conviction where all other co-conspirators are acquitted. For the reasons enunciated in *Powell* (including specifically the possibility of mistake, compromise, or lenity, and the independent availability of sufficiency-of-the-evidence review), such verdicts should not be subject to review for inconsistency." *Id*.

Limited case law exists regarding conspiracy and inconsistent verdicts in the context of trials in which two separate juries adjudicate the guilt of each co-defendant separately. The Eleventh Circuit has provided some instruction on this issue in *United States v. Hayes*, 676 F.2d 1359 (11th Cir. 1982). In *Hayes*, co-defendants Hayes and Ward were tried by two separate juries on three counts of drug related charges: attempt to possess with intent to distribute, conspiracy to attempt to distribute and to

7

possess with intent to distribute, and conspiracy to attempt to import drugs. *Id*. at 1361. Hayes was sentenced to two consecutive three and one-half year prison terms, and Ward was sentenced to two consecutive terms of five years each. The Eleventh Circuit found no constitutional violation resulting from the two-jury trial structure where different sentences were imposed and the prosecution improperly alluded to a co-defendant during cross-examination. In reference to *United States v. Crane*, 499 F.2d 1385 (6th Cir. 1974), the court stated, "[i]n view of the absence of any specific indicia of prejudice, in addition to the jury's finding of guilt as to only one of the two co-defendants, the court in *Crane* was convinced that no constitutional violation had occurred." *Hayes*, 676 F.2d at 1366. Because *Crane* involved charges of armed robbery and possession of stolen funds from a federally insured bank instead of conspiracy charges, it is necessary to examine it in the context in which the Eleventh Circuit applied it to a case involving conspiracy, such as *Hayes*.

In applying the *Crane* and *Hayes* rationale along with the Fifth Circuit law, which indicates that inconsistent verdicts will not be a bar to conviction where all other co-conspirators are acquitted, this Court finds no specific indicia of prejudice that would constitute a constitutional violation or grounds for a new trial. As asserted by the Government, Cutno may have very well conspired with an unknown party or even Ashley Williams, which would result

8

in a justifiable verdict.

The case law cited by Defendant Cutno does not support Defendant Cutno's assertion that the acquittal of Co-Defendant Ryan Veazie necessitates a similar verdict on behalf of Defendant Jerry Cutno. Specifically, as support for Defendant's assertion he cites *United States v. Walker*, 871 F.2d 1298, 1304 n.5 (6th Cir. 1989), which reads, "where all possible conspirators are tied together and all but one are acquitted, the remaining conspirator's conviction must be reversed." However, this footnote goes on to state, "[t]his rule does not apply where co-conspirators are tried separately or could have conspired with unindicted individuals." *Id*. The two-jury trial calls into doubt the applicability of this rule of consistency to the facts at bar, and even more damaging to Defendant's contentions is the reference to unindicted individuals, which may encapsulate witness Ashley Williams, for example.

**B.   New Trial Under Rule 33 of the Federal Rules of Criminal Procedure**

Rule 33 of the Federal Rules of Criminal Procedure specifically states that "the court may grant a new trial. . . if the interests of justice so requires." Newly discovered evidence, juror bias, prosecutorial misconduct, ineffective assistance of counsel, witness perjury, or the rendering of a verdict against the great weight of the evidence comprise the grounds upon which a new trial may be granted. *United States v. Ferguson*, 246 F.3d 129 (2nd

9

Cir. 2001); *United States v. Arena*, 918 F.Supp. 561 (NDNY 1996).

### 1. Inadmissable Evidence Supporting Defense Theory

Defendant Jerry Cutno cites the in-trial ruling that Defendant Cutno could not present evidence to support his defense that Defendant Veazie and Ms. Williams acted together to murder Mr. Miller because he had become an interference to their relationship, especially since this defense had been set forth in the opening statement made on behalf of Mr. Cutno as grounds for a new trial.  However, Defendant Jerry Cutno has mis-characterized the events that transpired.  On February 13, 2008, an *in camera* status conference was held in chambers with Court staff, as well as with counsel for Defendant Jerry Cutno to discuss the confidential Motion to Continue Trial filed by Defendant Jerry Cutno.  The Court acknowledged that the information raised in that motion may serve as the basis for post-trial proceedings, such a motion could not be granted based on mere speculation without the requisite evidence to accompany it.  (See Rec. Doc. No. 188).  Likewise, Defendant has presently failed to produce the requisite evidence to support said allegations, and accordingly the submission in court of said evidence lacked relevance and probative value.

### 2. Kenneth White's Testimony

This Court also finds that Government witness Kenneth White's untruthful testimony about his criminal history, as well as his

reference to other crimes possibly committed by Cutno do not rise to the level of reversible error.  Specifically, Defendant Jerry Cutno contends that Mr. White misrepresented his record when questioned by the prosecutor and the Government did nothing to correct this misrepresentation.  While he acknowledged his simple robbery and federal cocaine convictions, Mr. White failed to inform the jury of the convictions resulting from 10 other cases in St. James Parish.  Defendant Cutno asserts that the Government had a duty to reveal impeaching information and correct his false testimony.

Such allegations of government failure to turn over exculpatory and impeaching evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) requires the use of a three part test.  *United States. v. Garza*, 264 Fed.Appx. 369, 374 (5th Cir. 2008).  The defendant must show that: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment."  *Id*. (quoting *United States v. Martin,* 431 F.3d 846, 850 (5th Cir. 2005).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed by the defense, the result of the proceeding would have been different." *Garza*, 264 Fed.Appx. at 374 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).)  This Court finds that the credibility of Mr.

White was already placed into question due to the crimes already revealed, and disclosing the additional crimes would not have resulted in a different verdict.

The Supreme Court held that due process is violated when the state knowingly offers false testimony to obtain a conviction and permits that testimony to go uncorrected, *Napue v. Illinois*, 360 U.S. 264, 269-270, 79 S.Ct. 1173, 1176-1178, 3 L.Ed.2d 1217 (1959). False testimony for these purposes includes testimony that affects only the credibility of a witness. *Id*. The grant of a new trial based upon a *Napue* violation is proper only if (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material. *United Stated v. Backburn*, 9 F.3d 353, 357 (5th Cir. 1993); Thompson v. Cain, 161 F.3d 802, 808 (5th Cir. 1998).

While the prosecutor bears a duty to correct false testimony of a government witness, the Fifth Circuit has held that a court "need not ground reversal solely on the failure to perform that duty." *United States v. Sanfilippo*, 564 F.2d 176, 178 (5th Cir. 1977)(the Fifth Circuit reversed and remanded the trial court because of the government's failure to correct Mori's false testimony **combined with** the prosecutor's capitalizing on it in his closing argument in an apparent attempt to minimize the effect of the plea bargain on the credibility of the witness.) Unlike in *United States v. Mason*, 293 F.3d 826 (5th Cir. 2002), where the

12

informant stated that he had not entered into a plea agreement with the government, the credibility of Kenneth White had been damaged already because he did disclose that he had an extensive criminal record, and failed to fully divulge the entirety of said record. Therefore, this Court finds said violation not to be material, and do not warrant a new trial on these grounds.  However, the Government specifically AUSA Gregory Kennedy is placed on notice that more diligence will be required of the prosecution in avoiding situations as here, involving prior conviction history of "jailhouse snitches," that raise the specter of potential "Brady" violations.

In addition, Mr. White alluded to other crimes possibly committed by Cutno, which prompted Defendant Cutno to seek a mistrial.  Specifically, Kenneth White stated in trial, "I introduced myself to [Jerry Cutno] and he introduced himself to me, and he said he thought he had knowed me from doing time in the state."  Kenneth White's reference to a previous crime, however, does not constitute reversible error.  Limiting instructions given by this Court was sufficient to cure any prejudice arising from Mr. White's reference to past crimes of Defendant Cutno.  *See United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001)(With regard to the Rule 404(b) evidence that concerned acts of one defendant, limiting instructions that the evidence of bad acts by one defendant could not be considered as to the other defendants would

suffice to reduce the risk of prejudice).  For reasons given at pretrial and trial, the *Messiah* based objections are overruled for lack of evidence in this instance of a violation or overly prejudicial impact upon the defense. *See State v. Messiah*, 538 So.2d 175 (La. 1988).

### 3. The Government's Discovery Violation

Defendant Cutno highlights that the Government violated the Court's discovery order, thereby preventing the defense from obtaining an expert to testify regarding critical issues regarding cocaine located in Ashley Williams' apartment. Specifically, as late as February 15, 2008, AUSA Greg Kennedy advised Defense Counsel that he intended to present an expert witness, Chad Scott, at trial who would be asked to render an opinion that a drug trafficking operation was going on at the time Mr. Miller was killed. In response to Defendant's Motion to Continue (Rec. Doc. No. 189), this Court ordered that the Government be required to produce its expert for questioning by Defense Counsel no later than Thursday, February 21, 2008. If Defendant still claims prejudice from late production the Court would entertain reconsideration of allowing witness to testify at trial by providing a conference call with all counsel on Friday, February 22, 2008 no later than 10:00 a.m. This Court further stated that it found no prejudice by the late production, but warned the Government of its displeasure by its late production. Defendant failed to follow up with

14

allegations of prejudice after having had the opportunity to question said witness. (Rec. Doc. No. 199). This Court went on to highlight Fifth Court precedent that states, "failure to comply with Rule 16(a) is not reversible in the absence of a showing of prejudice." *United States v. DeWeese*, 632 F.2d 1267, 1273 (5th Cir. 1980).

In reviewing discovery matters, the court must use an abuse of discretion standard, and may not reverse unless the defendant can show prejudice to his substantial rights. *United States v. Holmes*, 406 F.3d 337, 357 (5th Cir. 2005). Delayed production of discovery is not in and of itself a ground for reversal of conviction. *United States v. Johnston,* 127 F.3d 380, 391 (5th Cir. 1997). The *Holmes* court held that delayed disclosure of an investigative report did not prejudice the defendant's substantial rights regarding his decision to testify because defense counsel had time to review the report and prepare Holmes for cross examination. *Holmes*, 406 F.3d at 357. The court found no merit to Holmes's claim that delayed discovery undermined the defense strategy because Holmes could not have been "blind-sided" by a report of a meeting which he attended. *Id.* Similarly, *United States v. McKinney*, 758 F.2d 1036, 1049 (5th Cir. 1985), held that with regard to tardy disclosure, "the inquiry is whether the defendant was prejudiced by the tardy disclosure." *Id*. at 1050. If the defendant was able to put the information to use, a conviction cannot be reversed simply because the evidence

15

was not disclosed as early as it could have or should have been. *Id*. Reversal of a conviction was found to be inappropriate unless tardy disclosure resulted in a fundamentally unfair trial. *Id*. This Court extended Defendant the opportunity to demonstrate prejudice after having the opportunity to question the expert witness. However, Defendant failed to do so, effectively waiving his objection resulting from alleged prejudice. As such, a new trial is not warranted on these grounds.

### 4. Denial of Motion to Sever

Defendant Cutno contends that this Court's failure to sever the trial allowed the jury to hear prejudicial other crime evidence regarding Veazie, which was prejudicial to Defendant Cutno. Defendant Cutno also alleges that he could not defend himself for fear of being considered a rat. Defendant Cutno's fear of being considered a rat is common to crimes of conspiracy and those involving multiple defendants. However, such a fear does not invalidate the use of a trial with a separate jury for each Defendant. Defendant Ryan Veazie's Motion to Sever Defendant from Co-Defendant (Rec. Doc. No. 147) was GRANTED IN PART and DENIED IN PART, allowing one trial with a separate jury for each Defendant to proceed. The *Bruton* issue, as well as the interests of justice and judicial economy were resolved and satisfied by this structure. The fact that Defendant Cutno's jury was allowed to hear other crime evidence in the form of co-

16

Defendant Ryan Veazie's prior felony conviction does not result in reversible error. *See United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001)(With regard to the Rule 404(b) evidence that concerned acts of one defendant, limiting instructions that the evidence of bad acts by one defendant could not be considered as to the other defendants would suffice to reduce the risk of prejudice).

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment of Acquittal Under Rule 29 and Motion for New Trial Under Rule 33 are **DENIED.**

New Orleans, Louisiana this 12th day of November, 2008.

                                  _____
                                         IVAN L.R. LEMELLE
                                  UNITED STATES DISTRICT COURT

17