UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CRIMINAL ACTION**

**VERSUS**                                                      **NO. 05-268**

**JERRY CUTNO**                                                 **SECTION "B" (1)**

<u>ORDER AND REASONS</u>

    Before the Court is Defendant Jerry Cutno's Pro Se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Rec. Doc. No. 321). The Government filed a Response. (Rec. Doc. No. 330). Cutno filed a Reply thereto. (Rec. Doc. No. 333). Accordingly, and for the reasons enumerated below **IT IS ORDERED** that Defendant's Motion is **DENIED**.

    Defendant Cutno was convicted of Conspiracy to Possess with the Intent to Distribute Cocain, in violation of 21 U.S.C. § 846 (Count 1), and Use of a Firearm in Relation to a Drug Trafficking Offense Causing Death, in violation of 18 U.S.C. § 924(j)(Count 2).(Rec. Doc. No. 267). He was sentenced to life imprisonment on Count 2 and 240 months on Count 1 – all to run concurrently. (*Id.*) Cutno appealed his conviction to the United States Court of Appeals for the Fifth Circuit, which affirmed the judgement. *United States v. Cutno*, 431 F. App'x 275 (5th Cir. 2011). Cutno now seeks to vacate his sentence, claiming ineffective assistance of counsel. Specifically, Cutno argues his counsel was ineffective in seven respects: (1) By failing to seek dismissal

1

of the indictment for statutory and Constitutional speedy trial violations; (2) Depriving Cunto the opportunity to participate in his own defense; (3) Failing to call expert witnesses; (4) Failing to call alibi witnesses; (5) Failing to properly investigate the case; (6) Failing to offer objections or offer mitigation at sentencing; and (7) Failing to raise certain issues on appeal.

**I. Ineffective Assistance of Counsel**

The Sixth Amendment guarantees not only the right to counsel, but also the right to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish that counsel was ineffective – entitling a defendant to post-conviction relief – a reviewing court is guided by a two-pronged test. *Id.* at 687. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Crutsinger v. Stephens*, 2013 WL 5227078 (5th Cir. Sept. 18, 2013).

First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 686. Under this prong, counsel's conduct is measured by "an objective standard of reasonableness under prevailing professional norms." *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005).

Second, the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 686. Thus, it is not enough to establish that counsel's actions were

improper, rather "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Cutno contends that his counsel at trial and on appeal were ineffective in several respects. The Court reviews each claim independently to determine if any of Cutno's allegations amount to Constitutionally deficient representation.

**A. Speedy Trial**

Cutno first claims that his counsel was ineffective by failing to object to statutory violations of the Speedy Trial Act. Second he claims his counsel was ineffective by failing to object to Constitutional violations of the right to a speedy trial.

1. Speedy Trial Act

The Speedy Trial Act requires that, in general, criminal trials must commence within seventy-days of an indictment's filing or a defendant's initial appearance. 18 U.S.C. § 3161(c)(1). If the seventy-day deadline is not met – accounting for excluded time discussed more fully below – the charges must be dismissed. *Id.* at § 3161(a)(2); *Bloate v. United States*, 559 U.S. 196, 199 (2010).

The Act excludes from the calculation of the seventy-day period a number of pretrial events. *See id.* at § 3161(h). Some

events are automatically excludable, including delays resulting from the filing of pretrial motions and delays resulting from the actions of a codefendant. *Id.* at § 3161(h). Other events are only excluded if it is specifically found by the Court "that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *See id.* at § 3161(h)(7)(A).

Here, Cutno's initial appearance was on February 8, 2006, beginning the seventy-day clock. (Rec. Doc. No. 32). The original trial date was set for August 28, 2006. (Rec. Doc. No. 36). Although this trial date was not within the seventy-day time frame, the delay can be explained by Cutno's co-defendant – Ryan Veazie – requesting to delay trial. Veazie had already appeared before the Court, and requested that trial be continued. (Rec. Doc. No. 15). That request was granted, with a specific finding that "the ends of justice served by granting [the] motion outweigh the best interests of the public and the defendant in a speedy trial." (Rec. Doc. No. 15) (citing 18 U.S.C. 3161(h)(8)(B)(iv)). The time between Cutno's initial appearance and the original trial date was therefore both automatically excludable, as a reasonable period of delay relating to the trial of a codefendant, 18 U.S.C. 3161(h)(6); *see also United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998) (time "properly excludable from [Defendant's] seventy-day speedy trial timetable

as it was necessary to achieve a joint trial"), and additionally excludable pursuant to the Court's specific finding that the ends of justice were served by the delay. (Rec. Doc. No. 15) (citing 18 U.S.C. 3161(h)(8)(B)(iv)).

Following the initial continuance, several other continuances were granted for various reasons – including difficulties producing discovery materials because of evidence damage during Hurricane Katrina, new evidence requiring further investigation, and a family emergency requiring the attention of defense counsel. Although this caused trial to be delayed for over two years, each continuance was granted with a specific finding that the ends of justice required a delay in trial.[1]

---

[1] Specifically, a second motion to continue trial was filed by both Cutno and Veazie on August 3, 2006. (Rec. Doc. No. 80). The motion was granted, with a specific finding that the ends of justice would be served by the continuance. (Rec. Doc. No. 82). Trial was continued to June 4, 2007. (Rec. Doc. No. 86). The United States next moved for a continuance on April 23, 2007. (Rec. Doc. No. 118). The motion for continuance was opposed by Veazie, but consented to by Cutno. Indeed, during a telephone conference with the Court while the motion was pending, Cutno's attorney stated that she had consulted with Cutno and that he had no objection to the continuance sought by the government. (Rec. Doc. No. 278 at p. 4-5). The continuance was granted, again with a specific finding that justice was served by the continuance. (Rec. Doc. No. 123). Trial was reset for July 16, 2007. (*Id.*) A further motion to continue trial was filed jointly by Veazie and Cutno on June 26, 2007, (Rec. Doc. No. 132), which was granted on July 2, 2007 with the specific finding that failing to grant the request "could result in a miscarriage of justice." (Rec. Doc. No. 133). Trial was then set for November 26, 2007. (Rec. Doc. No. 134). Cutno's attorney then filed a motion on November 11, 2007, indicating she had a family emergency preventing her from preparing for trial. (Rec. Doc. No. 141). In the motion, counsel indicated "[d]esiring to have the best possible representation at trial, Mr. Cutno expressly and explicitly waives his right under 18 U.S.C. 3161 to a speedy trial by the filing of this pleading as he believse [sic] that it is in his best personal interest and the interest of justice do so." (*Id*. at p. 3). The motion was granted, again with a finding that the ends of justice would be served by such a grant, and trial was set for January 14, 2008. (Rec. Doc. No. 144). A further motion was filed by Cutno's attorney on December 21, 2007 indicating that, in light of new evidence supplied by the government, additional time was needed to prepare for trial. (Rec. Doc. No. 159). The motion stated "[d]esiring to have the best

Thus, the time between Cutno's initial appearance and eventual trial date were specifically excluded from the seventy-day speedy trial clock required by 18 U.S.C. § 3161. Therefore, no violation of the statute occurred and, as a result, Cutno's counsel was not deficient for failing to object to the delays.

2. Right to a Speedy Trial

The right to a speedy trial – guaranteed by the 6th amendment – protects not only the right of the accused to swift justice, but also the public's interest in prompt disposition of criminal proceedings. *Barker v. Wingo*, 407 U.S. 514, 519 (1972). That being said, the Supreme Court has cautioned that it is "impossible to determine with precision when the right has been denied" and it cannot be said with certainty "how long is too long" for a trial to be delayed. *Id*. at 521. In weighing whether a delay has amounted to a Constitutional violation, four factors are to be considered: [1] the "[l]ength of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Id.* at 530.

---

possible representation at trial and extremely concerned that his attorneys will be able to vigorously defend against oral confessions that he denies making, Mr. Cutno expressly and explicitly waives his right under 18 **U.S.C.** 3161 to a speedy trial by the filing of this pleading as he believes that it is in his best personal interest and the interest of justice do so." (*Id.* at p. 4). The motion was granted, after finding that justice would be best served by the continuance. (Rec. Doc. No. 170). A further request for a continuance was requested but denied by the Court (Rec. Doc. No. 199) and trial commenced on February 25, 2008.

6

The length of delay factor acts as a threshold inquiry, and only if the Court finds a delay to be "presumptively prejudicial" should it move to the other three factors. *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (quoting *Barker*, 407 U.S. at 530). Here, the over two-year delay is presumptively prejudicial to Cutno, although "only slightly" considering the complex nature of the case and the fact that Cutno was tried jointly with a codefendant. *See Laws v. Stephens*, 2013 WL 3654551 at *3 (5th Cir. July 16, 2013) (finding a twenty-three month delay in a murder trial to be prsumptively prejudicial, but "at most, only slightly . . ."); *see also United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (when more than one year has passed between indictment and trial, the full *Barker* analysis is used).

The second factor primarily considers "which party is more responsible for the delay." *Laws*, 2013 WL 3654551 at *3. Here, the delay can be equally attributed to the government and Cutno. The government requested a number of trial continuances, but so did Cutno. *See supra* fn. 1. It was recognized by all counsel involved in the litigation that the circumstances of the case required several extensions. Indeed, the only recorded objections to any of the extensions of time came from Veazie, (Rec. Doc. No. 278), and from the Government(Rec. Doc. No. 193)- never from Cutno.

As to the third factor, Cutno claims that his attorneys acted "against his express instructions" and "continued to delay the proceedings not for any strategic reasons but because they were unprepared and unresponsive to his involvement in his own defense." (Rec. Doc. No. 321). This is unpersuasive given the record. Cutno's counsel on multiple occasions assured the Court that Cutno consented to all requests for continuances. *See supra* n.1. The Court has little reason to doubt the accuracy of those statements, and nothing in the record suggests that Cutno wanted to proceed to trial earlier than the February 25th date.[2]

Under the fourth factor, "[o]rdinarily, the burden of demonstrating [] prejudice rests on the defendant" unless "the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is to be presumed." *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). Here, as indicated above, the first three factors do not weight in favor of Cutno. Thus, in order to succeed he must establish that he was prejudiced by the delay. He has failed to do so. No evidence exists to suggest that the evidence against Cutno went stale because of the delay in trial, or that his defense was in any way

---

[2] There is much irony in Cutno's position that he did not want his attorneys to further delay trial at the time the continuances were sought. As we shall see, Cutno's other claims to vacate are almost all arguments that his counsel should have done more to investigate the case and seek out new witnesses – which would have likely taken extensive time and necessitated even further delay in trial. Cutno's contention here that he never authorized requests for continuances is therefore unavailing.

harmed because of the multiple continuances. On the contrary, the delay was necessary to ensure Cutno received a fair trial. Further, at all times - from arrest through trial – "the Government pursued [Cutno] with reasonable diligence." *Doggett v. United States*, 505 U.S. 647, 656 (1992).

The Court, having found that no violation of Cutno's 6th amendment right occurred, similarly finds that Cutno's counsel was not deficient for not having raised objections to the delays in trial. And, further, that he was not prejudiced by any failure on counsel's part to object to the continuances.

**B. Participation in Defense**

Cutno next claims that his counsel was ineffective for failing to allow Cutno to participate in his own defense. (Rec. Doc. No. 321 at 10).  More specifically, he avers that "his attorneys essentially put on the defense they chose instead of facilitating a plea of guilty or nolo contendere as he had requested." (*Id.*) Cutno argues that he was clear with his attorneys that he wanted to plead guilty, in an effort to avoid a harsh sentence. He also argues that he could have plead nolo contendere and, thus, not admitted guilt. But, Cutno contends, rather than permitting him to do so, his defense attorneys informed him that "the government would not let him plead guilty." (*Id.* at 12.) The Government, in response, claims that no plea was ever offered because "[t]he defendant always insisted on

9

his right to trial because he did not wish to cooperate with the government and repeatedly, through counsel, stated that he did not want to be labeled a 'rat.'" (Rec. Doc. No. 330 at 13).[3]

The *Strickland* framework for ineffective assistance of counsel applies to the plea negotiations process. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Counsel must effectively communicate any plea offers made by the government to the client, and appropriately advise them on the consequences of a plea or proceeding to trial. *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). However, it should also be noted that criminal defendants have no Constitutional right to a plea offer from the government. *Id.* at 1410. For this reason, if no plea offer is made by the government, the issue of ineffective assistance of counsel in the plea process is inapplicable. *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012). Here, the Government never offered Cutno a plea deal. (Rec. Doc. No. 330 at 13). Thus, defense counsel cannot be said to be ineffective for rejecting or failing to communicate a plea deal that never existed. Similarly, Cutno cannot establish that his eventual sentence was any different than any sentence he would have received had he pled guilty.

---

[3] Notably, Cutno does not dispute this statement in his Reply to the Government's Response. *See* (Rec. Doc. No. 333).

Cutno is additionally incorrect in his assumption that he would have been permitted to plea nolo contendere. (Rec. Doc. No. 321 at 12). Such a plea is only available "with the court's consent." Fed. Rule Crim. Pro. 11(a)(1). Given the nature of the crimes involved in this case, it is unlikely the Court would have accepted a plea where Cutno failed to admit guilt. Further, on the issue of prejudice, even assuming Cutno had plead nolo contendere to the charges in the indictment, his sentencing guideline level would have remained the same. Thus, the Court fails to find any prejudice on this issue. *See Lafler*, 132 S. Ct. at 1384 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

**C. Expert Witnesses**

Cutno next claims that his counsel was ineffective for failing to call expert witnesses to rebut the Government's evidence. As Cutno himself concedes, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy." (Rec. Doc. No. 321 at 27) (citing *Wilkerson v. Cain*, 233 F.3d 886, 892-93 (5th Cir. 2000). When determining whether an expert witness should have been called at trial, the reviewing Court must refrain from speculating what testimony at trial would have been or presuming that such testimony would have been helpful to the

defendant. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (trial counsel was not ineffective for failing to request an analysis of blood found on defendant's shirt when he was arrested or for failing to call an expert witness to testify about the blood testing). Instead, the defendant must present specific "evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded." *Id.*

Cutno's primary contention on the issue of expert witnesses is that no DNA tests were performed on the blood stains found on Cutno's clothes, and no ballistic tests were performed on the gun involved. (Rec. Doc. No. 321 at 14). Both the clothes and gun were stored prior to trial in the New Orleans Police Department's evidence room, which was flooded during Hurricane Katrina. (*Id.*).

Cutno has failed to establish what expert testimony could have been provided on his behalf, or what any expert would have stated to change the result of the trial.  Rather than cite specific evidence that should have been offered, Cutno contends his attorney represented to the Court during pretrial matters that the scientific evidence would support the fact that Veazie was the shooter, not Cutno. (Rec. Doc. No. 321 at 15) (citing Rec. Doc. No. 290 at 150-51). However, upon closer review, Cutno's counsel clearly stated to the Court that she intended to

prove this fact not by calling expert witnesses, but by crossing examining the Government's witnesses:

> THE COURT: Who's the scientific expert that's going to testify about that?
>
> MS. MYERS: We're going to question Ruiz.
>
> THE COURT: This is the government's witnesses?
>
> MS. MYERS: All the government witnesses, the crime scene tech. We're going to question all of the lab reports with all of the gloves, the bullets, the -- everything of that nature.

Rec. Doc. No. 290 at 152.

Defense counsel followed through on this assertion – challenging the Government's witnesses, their investigation techniques, and their scientific conclusions.[4] The Court finds no deficient performance or prejudice on this issue.

**D. Alibi Witnesses**

Cutno further contends that his counsel failed to call alibi witnesses on his behalf. Similar to the failure to call an expert witness, in order to establish prejudice a defendant "'must show not only that [the] testimony would have been favorable, but also

---

[4] *See* (Rec. Doc. No. 291 at 138-155) (cross examination of forensic technician); (Rec. Doc. No. 292 at 92-135 ) (cross examination of police investigator); (*Id.* at 149-56) (cross examination of officer); (*Id.* at 186-87 ) (cross examination of forensic biologist); (*Id.* at 217-223 ) (cross examination of forensic scientist); (Rec. Doc. No. 293 at 974-76) (cross examination of police firearms examiner); (*Id.* at 997-98) (cross examination of pathologist).

that the witness would have testified at trial.'" *Hinkle v. Dretke*, 86 F. App'x 687, 688 (5th Cir. 2004) (quoting *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002)). In terms of eyewitnesses to a crime, counsel's failure to interview an eyewitness may support a claim of ineffective assistance. *Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003).

 Here, Cutno identifies two witnesses he believes should have been called by defense counsel – Lionel Franklin, who "said he witnessed the murder but didn't want to get involved," and Anita Duncan, who "would have testified that she was with Cutno the night before and didn't see him with a gun, handcuffs, or a black bag. This would have directly discredited the testimony of the government's key witness Ashley Williams." (Rec. Doc. No. 321 at 16).

 Cutno again fails to demonstrate that either witness would have testified at trial, or that either witness would have provided favorable testimony. As Cutno acknowledges, Franklin "didn't want to get involved," making it only speculative that he would have testified at trial. Further, Cutno does not state with any specificity what Franklin saw, other than asserting Franklin could testify the shooter was not Cutno. (*Id.*). As far as Duncan, the proposed testimony offered by Cutno seems of marginal value to his defense. It would not have established any direct evidence of Cutno's innocence, and at best only served to impeach a select

portion of Ashley Williams' testimony.

The Court finds no ineffectiveness or prejudice in counsels' failure to call the two witnesses identified by Cutno. Additionally, the Court notes that Defense counsel did cross examine Williams in an effort to undermine her credibility as a witness. (Rec. Doc. No. 292 at 6-28). Counsel also cross examined the lead police investigator on why he let Franklin leave the scene of the shooting after he was interviewed. (Rec. Doc. No. 292 at 123-25).[5] Counsel further called a police officer who witnessed a man outside the house where the shooting occurred, and testified it was not Cutno. (Rec. Doc. No. 293 at 1053). The Court thus finds defense counsels' overall trial strategy in what witnesses to call, given the witnesses available, consistent with effective representation.

---

[5] It appears both sides may have had issues contacting Franklin following his initial interview with police on the day of the shooting. Defense counsel highlighted this point in opening statements, and criticized the government for not obtaining more information from Franklin:

> There was a witness, an actual person who saw what happened outside the apartment. And the police will tell you about that name -- that man, or at least I'm going to cross-examine him about it. His name was Lionel Franklin. Mr. Franklin told them he saw exactly what happened and who did the shooting outside the apartment, but he didn't want to talk to the police. So what did the police do? They let him go. They let him walk away. So the person that could have told you-all positively who shot Mr. Miller outside the apartment is not here.

(Rec. Doc. No. 291 at 45).

**E. Case Investigation**

Cutno next avers that his counsel failed to properly investigate the case or acquire the services of an investigator. His primary contention on this score is that the lead homicide investigator – Sergeant Ronald Ruiz – was the target of a federal investigation at the time of Cutno's trial. (Rec. Doc. No. 321 at 18). Cutno argues this was "a very strong piece of evidence for the jury to consider." (*Id.*). Leaving aside the question of whether or not this information would have been allowed by the Court as impeachment evidence or instead would have been excluded as more prejudicial than probative, Cutno offers scant evidence that this information would have influenced the jury. As the Government points out in its Response, "Cutno makes [sic] offers no evidence nor explanation as to anything that Sgt. Ruiz did that was improper in this case or would have altered the outcome of this case." Similarly, Cutno offers no evidence that his counsel would have been able to obtain knowledge of the then pending investigation while his trial was proceeding. Thus, the Court fails to find ineffectiveness or prejudice on this issue.

**F. Objections and Mitigation at Sentencing**

Cutno further contends that counsel was ineffective in failing to offer objections or argue in mitigation of the

sentence to be imposed. Here, Cutno's claims are misguided. Counsel did offer mitigating factors at sentencing. First, counsel argued to the Court that the verdict was improper, and should have been second degree murder rather than first based on a review of the jury interrogatories. (Rec. Doc. No. 279 at 11). This issue was the subject of a prior motion for a new trial, but counsel raised it again in support of a lesser sentence. (*Id.*). Second, counsel argued that Veazie and Ashley Williams were the more capable persons, and yet had escaped justice.[6]

Cutno further alleges that his counsel should have objected to the Presentence Report and sought a downward variance for "over-representation of criminal history, departure based on circumstances not adequately taken into account by the guidelines, and aberrant behavior . . ." (Rec. Doc. No. 321 at

---

[6] Counsel stated at the sentencing hearing:

Because what we've had here, as the Court knows, is a situation where the man, who by the Government's evidence, would be the more culpable of the two in this case, is gone completely free. He's walking the streets today. The woman, who, I know many people believe engineered the whole thing, I don't know that she's ever spent a night in jail. Her case is still open as far as I can tell. Nothing has happened to her; nothing may ever happen to her. She may go completely free.
(Rec. Doc. No. 279 at 11)

Counsel went on to say:

It's just not fair. And I recognize after the number of years that I've done this, that that doesn't necessarily have anything to do with the result under law, but sometimes there are opportunities for things to be made fair. And because, as Your Honor has pointed out, these guidelines are advisory, because you're as aware as any of us of the disparity in treatment of the individuals in this case, the one remedy that does remain to keep this ghost from haunting the law is Your Honor and your opportunity to fashion a sentence that will somehow make the outcome of this case more fair.
(*Id.* at 14).

17

20). However, Cutno does not indicate what was objectionable about the report, or specifically why he believes his criminal history was over represented. Further, the Court made a specific finding on the record at sentencing that the total offense level and criminal history category was accurate. (Rec. Doc. No. 279 at 24). Thus, the Court finds no deficiency or prejudice on this issue.

**G. Raising Issues on Appeal**

Lastly, Cutno argues that counsel was ineffective on appeal by failing to raise certain issues – namely, the issues he raises above. The Court, having found that none of the issues above amounted to error at trial, further finds that appellate counsel was not deficient, and Cutno was not prejudiced, by those issues not being raised on direct appeal. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Accordingly, and for the reasons enumerated above **IT IS ORDERED** that the Motion is **DENIED**.

New Orleans, Louisiana, this 5th day of November, 2013.

_____
UNITED STATES DISTRICT JUDGE

18